IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–01526–REB–KMT

DAMON O. BARRY,

    Plaintiff,

v.

BANK OF AMERICA, N.A., and
AURORA LOAN SERVICES, LLC,

    Defendants.

---

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on Defendant Bank of America's ("BOA") "Motion to Compel Discovery Responses and 26(a)(1) Documents Pursuant to Fed. R. Civ. P. 37" [Doc. No. 78, filed June 21, 2011] and BOA's "Motion for Discovery Sanctions Pursuant to Fed. R. Civ. P. 41, 37(d)(ii) and D.C.COLOLCivR 30.3" [Doc. No. 81, filed June 30, 2011]. At the motions hearing on August 3, 2011, both motions were granted. The court took under advisement the amount of monetary compensation to be awarded to BOA pursuant to Fed. R. Civ. P. 37(a)(5) as well as whether more serious sanctions would be recommended in light of both the Plaintiff and his counsel's discovery misconduct during the pendency of this case. This court now recommends that, in addition to imposition of monetary compensation to BOA, the case be dismissed with prejudice in light of the discovery abuse as noted herein and pursuant to

D.C.COLO.LCivR 83.4-5 for violation of, among others, Colorado Rules of Professional Conduct 3.1 and 3.3(b).

### I. *History of the Litigation*

Plaintiff originally filed this case requesting declaratory and injunctive relief on June 28, 2010, alleging violation of the Truth in Lending Act ("TILA") in connection with the plaintiff's refinancing of a $690,000 mortgage on property located at 2951 W. 114th Court, Westminster, Colorado, his home in 2007. (Compl. [Doc. No. 1]; Am. Compl. [Doc. No. 43].) The Complaint asserted that undefined required disclosures were not made to the plaintiff. (Am. Compl. at ¶ 12.) On the same day, Plaintiff and his wife filed a similar case against Countrywide Home Loans, FSB, in connection with a home equity line of credit ("HELOC") for $175,000 to pay off a second mortgage against a different property with a first mortgage of $701,000, also located in Westminster, Colorado.[1] *See* Case No. 10-cv-01525-JLK ("1525 case"). Both complaints allege that Plaintiff Damon Barry occupied the two properties as his principal residence(s). (Am. Compl. at ¶ 7; 1525 Case, Compl. at ¶ 6.)

Plaintiff closed the HELOC loan in the 1525 Case on Monday, June 25, 2007. (1525 Case, Compl. at ¶ 9.) The mortgage loan in this case was closed on Thursday, June 28, 2007. (Am. Compl. ¶ 9.) In both cases, Plaintiff sent a written Notice of Rescission to the respective defendants on June 25, 2010 and the cases both were filed on June 28, 2010. (Am. Compl. at ¶ 14; 1525 Case, Compl. at ¶ 11.) Although Senior District Judge John L. Kane allowed the

---

[1] 11245 Clay Court, Westminster, Colorado.

parties to brief the issue of TILA's statutory period of repose in the 1525 Case, the plaintiff (after requesting additional briefing time from Judge Kane) failed to file any supplemental briefing. (1525 Case [Doc. Nos. 27 and 29].)  On February 8, 2011, Senior Judge Kane dismissed the 1525 Case after determining that Plaintiffs' claim was not timely filed in light of TILA's statute of repose.[2]  (1525 Case, Doc. No. 30.)

After the Amended Complaint was filed in this action, BOA filed a Motion to Dismiss which is currently pending before the District Court.[3]  [Doc. No. 41, filed November 29, 2010.] On April 25, 2011, BOA, with a looming discovery cut off date of April 29, 2011, requested an extension of the discovery cut-off date for the sole purpose of taking the deposition of Plaintiff. BOA claimed that counsel had not been able to schedule a date for the deposition because of Plaintiff's unavailability.  [Doc. No. 62 at ¶¶ 2 and 4.]  BOA also stated that the plaintiff was attempting to sell the property involved in this case as a means to resolve the litigation.  (*Id.* at ¶ 5.)  This court granted the unopposed motion and ordered that the deposition of Plaintiff occur on or before May 30, 2011.  [Doc. No. 64.]  The court also ordered the parties to file a joint status report by May 3, 2011, advising the court of the date set for Plaintiff's deposition.  (*Id.*)

On May 3, 2011, BOA alone filed a status report claiming, "[o]n Friday, April 29, 2011, Mr. Nelson responded [*to Defendant's inquiry regarding deposition date*] stating: 'I spoke with

---

[2] Given the difference in the closing dates of the mortgage in this case and the HELOC in the 1525 Case, the analysis of the TILA statute of repose would differ in this case.

[3] Aurora Loan Services has also filed a Motion to Dismiss which is currently pending [Doc. No. 70, files May 6, 2011].

3

Mr. Barry today. His schedule is filled up in May, but June 7 (and most of the rest of the month after then) will work.' " (Status Report [Doc. No. 69] at 2.) Although BOA reported that it protested the date being outside the date ordered by the court, Mr. Nelson refused to consider earlier dates which would be within the court's order, stating, "the plaintiff would be unavailable at any time in May." (*Id.*) The Status Report also noted that disclosures which had been due in October 2010 had not been received, nor had any responses been made to written discovery propounded by BOA. (*Id.* at 2-3.) BOA noted that a motion to compel likely was forthcoming. (*Id.*)

The anticipated Motion to Compel was filed on June 21, 2011 [Doc. No. 78] ("Mot. Compel"). The court ordered a response from Plaintiff on or before July 15, 2011 and set a hearing for August 3, 2011, requiring Plaintiff to appear in person. [Doc. No. 83.] Plaintiff failed to file a response to the Motion to Compel on or before July 15, 2011–in fact, a response was never filed by Plaintiff. Plaintiff did file a response, however, to BOA's motion for discovery sanctions, claiming that the Plaintiff could not appear for deposition because his work schedule did not allow time for the deposition on the dates proposed by BOA. [Doc. No. 85 at 2.]

### II.   *Analysis*

At the hearing on August 3, 2011, the court provided Plaintiff and his counsel ample opportunity to explain why they were not participating in discovery and prosecuting the case. (Tr. of Mots. Hr'g dated August 3, 2011 [Doc. No. 92] [hereinafter "Tr."] at 2 and continuing.) Plaintiff's counsel admitted that he had not responded to any written discovery propounded upon

him by BOA. (Tr. 6:12-13.)  The court noted that the totality of the written discovery consisted of <u>two</u> requests for production of documents, <u>seven</u> requests for admission and <u>five</u> interrogatories.  (*Id.* at 7:5-11.)  Counsel again conceded that the discovery had been received but no responses had been made and further advised that neither he nor his client had any intention of responding to the discovery within the discovery period.[4]  (*Id.* at 7:15-22.)  In fact Mr. Nelson stated that he and his client "discussed the matter and that was the decision that was made [*not respond to any discovery request*]."  (*Id.* at 7:24-25.)  Mr. Nelson also conceded that Plaintiff had propounded no discovery on either defendant.  (*Id.* at 17-18.)  Compounding the situation, Mr. Nelson, in a typically vague and amorphous manner, conceded that his client actually had signed loan documents which Plaintiff originally contended did not exist.  (*Id.* at 11:22 - 12:8).  When questioned about how a defendant could possibly mount a defense against TILA claims when it did not even know exactly what it was the Plaintiff said was missing or wrong with the loan documents, Nelson responded that the discovery would be answered if the case went forward–even though at that time the discovery period had ended.  (*Id.* 13:17-18.)  Mr. Nelson appeared unfazed that such a procedure would defy both the Scheduling Order in this case and the Federal Rules of Civil Procedure.

The court noted that the Plaintiff had not complied with any Order given to him by this court, stating

---

[4] Mr. Nelson apparently felt he would be able to respond to discovery at some distant point in the future, after discovery was closed, (Tr. 20:8-10), if no settlement was reached with BOA.

> You've defied every Court Order I've given you. Every single one. You haven't complied with the Scheduling Order, you haven't participated in discovery in any way. You have made a decision not to respond to discovery, and you've not propounded any of your own. All the deadlines have passed. That leaves me to say you have not prosecuted this case at all, and it also leads me to believe that the case is not brought in good faith and that it is a fraud upon the court and the system to even bring this case.

(Tr. 9:15-25.) Upon Mr. Nelson's declaration that the case is "based upon deficiencies in the TILA disclosures" and the court's question, "Which disclosures are you talking about, exactly?" (Tr. 14:1-2) and "What is deficient . . . . What is it?", Mr. Nelson responded that because the statute was complicated and detailed and the finance charges had to be "stated within an extreme degree of accuracy" (*id.* at 16:8-14), " it's not unusual to find at least some error in there." (*Id.* at 16:8 through 17:8.) The court then stated, "You can sue anybody you want because probably there's going to be an error. You've now had this case for a year. Where's the error?" (*Id.* at 17:10-13.) While Mr. Nelson continued to hem and haw, the court read aloud BOA's interrogatory no. 2, which appeared to echo the questions from the court regarding the specific error in this case forming the basis of the claim.

Mr. Nelson, on behalf of the plaintiff, was never able to answer that simple question in response to discovery from BOA or in response to the court, even going so far as to claim that he did not have his file because he did not think the substantive responses to discovery were going to be discussed at a motion hearing which was called for the specific purpose of resolving contested discovery issues. (*Id.* at 18:13-20.)

At the conclusion of the hearing this court stated,

> It appears to me that the plaintiff is not prosecuting this case, is willfully not prosecuting it, but he's using it as basically a holdup to try to get some kind of settlement and live in his house for free as long as he can.

(*Id.* at 27:5-10.) The court then advised the parties that it would recommend dismissal with prejudice and also that BOA was entitled to recover costs for bringing the discovery motions pursuant to Rule 37(a)(5) as the plaintiff admitted he willfully and intentionally did not respond to discovery propounded to him even while stating to opposing counsel that he opposed the motion to compel. (*Id.* at 27:17-25.)

### A. *Rule 37(a)(5) Expenses*

BOA filed its Statement of Costs ("Costs") claiming $5,016.14 as its expenditure in order to file and argue the motions to compel. [Doc. No 93.] BOA's statement was supported by detailed itemized billing which appears to be part of a print-out of time spent by attorneys kept in the ordinary course of business (Costs, Ex. A) and by an Affidavit of Eric R. Coakley (Costs, Ex B). The billing records reflect that the billing attorneys assigned to the matter at hand were charging a rate of $165.00 per hour and billed 29.6 hours total for their work on the three discovery motions. Further, BOA claims $132.14 in costs for court reporter services when Mr. Barry failed to show up for his deposition and for Westlaw and Pacer research charges.

I find pursuant to Fed. R. Civ. P. 37(a)(5) that BOA made ample attempts to confer in good faith with the Plaintiff prior to filing the referenced discovery motions and that Plaintiff's refusal to respond to BOA's discovery requests was totally and completely unjustified. Therefore, there are no circumstances which would make an award of expenses unjust.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on [making the motion] multiplied by a reasonable hourly rate." *Henley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir.1983). This figure is the lodestar amount. I find based upon my experience in determining reasonable fees in civil actions in this federal court that an hourly rate of $165.00 per hour is not only reasonable; it is well below the average hourly rate which I have seen presented to this court since early 2008.

In determining whether counsel spent a reasonable number of hours on a matter, the court must consider several factors, including: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to a specific task. *Rocky Mountain Christian Church v. Board of County Com'rs of Boulder County*, Case No. 06-cv-00554-REB, 2010 WL 3703224, at *2 -3 (D. Colo. Sept. 13, 2010). The Tenth Circuit has held, "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1256 (10th Cir.1998).

Plaintiff has made objections to the hours spent on this matter on May 25, 2011, June 21, 2011, July 26, 28 and August 1, 2011, and June 21, 29 and 30, 2011. First, Plaintiff asserts that

8

BOA may not assess fees or costs associated with preparing for and attending the deposition of Plaintiff because the defendants were notified that the plaintiff would not appear for the scheduled and noticed deposition. Plaintiff, in fact, did not appear for his deposition in spite of the fact that counsel for both defendants and the court reporter waited for him and his counsel. Clearly, then, the need for court intervention was exacerbated by this behavior. If Plaintiff's deposition is ever taken, the attorney will have to begin anew preparing and reviewing the evidence, given the intervention of substantial time. Clearly, the court reporter's time was wasted by Plaintiff's willful non-appearance. Therefore, Plaintiff's objections to the fees and costs assessed in connection with the failed duly noticed deposition of Plaintiff are overruled.

The remainder of Plaintiff's objections reference what he considers to be an excessive amount of time spent on certain tasks. The court disagrees with Plaintiff's assessment of the time it takes to draft an intelligently worded pleading or letter–especially in light of the number of hours this court has expended drafting this order. None of the billing entries appear to be for an excessive amount of time, and many of the detailed time entries have been adjusted downward to reflect only those minutes spent on the two motions at issue.

Therefore I find that reasonable attorney's fees associated with preparation, filing, and prosecution of the discovery motions are $4,884.00, and that the costs requested of $132.00 are also reasonable and attributable directly to Plaintiff's discovery abuse.

### B.     *Dismissal With Prejudice*

The Federal Rules of Civil Procedure give a district court ample tools to deal with recalcitrant litigants. *See Jones v. Thompson*, 99 F.2d 261, 264 (10th Cir. 1993). Rule 16(f) enables the court to impose sanctions, including default judgment, when a party fails to appear at court ordered hearings and Rule 37(b)(2) permits the court to enter judgment when a party fails to obey an order to provide or permit discovery. *Id*.

In *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir.1992) the Tenth Circuit considered situations in which dismissal of the complaint would be an appropriate remedy where a litigant fails to reasonably participate in discovery. The court stated that when a trial court considers Rule 37 sanctions it "should ordinarily" consider various criteria "on the record" prior to dismissing a complaint. The factors are: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Id.* at 921 (internal quotations and citations omitted); *see also Gates Rubber Co. v. Bando Chems. Indus.*, 167 F.R.D. 90, 101 (D. Colo. 1996).

The transcript of the hearing in this matter provides ample justification for the extraordinary penalty of dismissal with prejudice. Plaintiff and his counsel acted together to bring a case for an improper purpose and then to stonewall discovery to buy time both to evade foreclosure of Plaintiff's mortgage and to coerce an unwarranted settlement from the defendant. Plaintiff's counsel as much as admitted he had no foundation for Plaintiff's case other than the

general notion that there is always some small error or variance in loan documents and given the stringent requirements of TILA there was bound to be a violation somewhere.

The prejudice to the defendants in this case is manifest.  They have been sued for violations of a statute without any grounds other than "it's not unusual to find at least some error in there."  Implicit in that statement lies the fact that in some cases, at least, there are no TILA violations.  The defendants have been forced to expend money, time and effort on defending a case where, after a year of litigation, the plaintiff cannot and will not point to any supporting deficiency in the loan documents.  Further, to bring a case and carry it forward in federal court in willful defiance of all the court's orders and to willfully block all discovery is significant interference with the judicial process.  Plaintiff's counsel admitted outright that both he and his client had decided together to stonewall all discovery in order to focus their efforts on getting a settlement from the defendants.  The court warned counsel on several occasions that the case appeared to have no basis and the Rule 11 motions filed by the defendants have been pending for months.  In spite of the court's strong lecture on August 3, 2011 and the court's granting the motion for sanctions, the plaintiff has blithely carried forward with the case so clearly other lesser sanctions will not be efficacious.

I find that all the *Ehrenhaus* factors are satisfied in this case and warrant imposition of this extraordinary sanction of dismissal with prejudice.

WHEREFORE, it is hereby **ORDERED**

That in connection with BOA's "Motion for Discovery Sanctions Pursuant to Fed. R. Civ. P. 41, 37(d)(ii) and D.C.COLOLCivR 30.3" [Doc. No. 81], which was granted by this court

on August 3, 2011, Plaintiff Damon O. Barry and his counsel, John G. Nelson, jointly and severally, shall pay to BOA as compensatory sanctions pursuant to the provisions of Fed. R. Civ. P. 37(a)(5) the amount of $5,016.14.  This amount is due and payable in full on or before September 30, 2011.

Further, for the foregoing reasons, I respectfully

**RECOMMEND** that this case be dismissed with prejudice.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 8th day of September, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge